IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2019

## CHARIS LYNN JETTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Fayette County**
No. 16-CR-47      J. Weber McCraw, Judge

_____

### No. W2018-01857-CCA-R3-PC

_____

The Petitioner, Charis Lynn Jetton, appeals from the Fayette County Circuit Court's denial of her petition for post-conviction relief from her 2016 guilty pleas to voluntary manslaughter and to possession of a firearm during the commission of a dangerous felony, for which she is serving an effective ten-year sentence. The Petitioner contends that she received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

J. Colin Rosser, Somerville, Tennessee, for the appellant, Charis Lynn Jetton.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Erick Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the Petitioner's August 5, 2016 guilty pleas to voluntary manslaughter and to possession of a firearm during the commission of a dangerous felony. Pursuant to the plea agreement, the Petitioner received consecutive sentences of seven years for the voluntary manslaughter conviction and three years to serve for the firearm conviction, for an effective ten-year sentence, but the trial court would determine the manner of service for the voluntary manslaughter sentence. At the sentencing hearing, the court denied the Petitioner's request for probation and ordered her to serve her sentence in confinement.

**Trial Court Proceedings**

At the guilty plea hearing, the State's recitation of the facts was as follows:

> Had the case gone to trial, the State's proof would have shown through Captain Phil Drewery and numerous other officers . . . that on or about December 16[th] at . . . 4:44 p.m., those officers received a 9-1-1 call from the defendant who stated that she had just shot her husband and had placed the gun in a cabinet. Officers arrived on the scene, had her step out of the house where she was secured and placed in a patrol car. Officers then entered the residence, found a male white subject who they identified as Jack Jetton, the defendant's husband, lying in the kitchen floor unresponsive. Officers secured the scene, found three juveniles in the residence . . . .

> Investigator Drewery spoke with the defendant who gave consent to enter the residence to process the scene. She was then transported by ambulance to [the emergency room] for what she reported to be minor injuries. Officers observed a gunshot wound to the victim's chest and ordered an autopsy. Investigator Drewery spoke with the defendant who stated that she fired one round from her .380 pistol striking the victim in the chest. That pistol was recovered and would have been introduced as evidence.

> The State's proof would have further shown that the defendant claimed to the officer that the deceased victim had grabbed her arm and twisted her thumb and that after doing that, she retrieved her weapon in the middle of an argument and shot him. Proof would have further shown from the medical examiner's office . . . that the victim was killed and the manner of death was homicide and the cause of death was a gunshot wound to the chest.

> There also may have been evidence introduced by [a minor child], who could have testified that he heard an argument in the house. He was upstairs when he heard an argument and then heard a gunshot and then [the defendant] came upstairs . . . and told him not to go downstairs.

> The State anticipates that there would have been some proof submitted likely by the defense, testimony through Dr. John Hudson, clinical psychologist, to the effect that the defendant displays evidence of a major schizoaffective disorder, and the State also anticipated that there may have been some evidence produced at trial about some history of domestic violence in the relationship between the defendant and the victim.

The Petitioner told the trial court that she understood the terms of the plea agreement, that she was pleading guilty to voluntary manslaughter, a lesser included offense of the indicted offense of second degree murder, and to possession of a firearm during the commission of a dangerous felony, a lesser included offense of employing a firearm during the commission of a dangerous felony, that she agreed to plead guilty as a Range II offender, although she had no previous criminal history, and that consecutive sentences were required. She understood that, by pleading guilty, she waived her rights to a trial, to an appeal, to confront and to cross-examine witnesses, to present witnesses in her defense, and against self-incrimination. She said that she was satisfied with defense counsel's representation, that counsel had properly investigated her case, and that she and counsel had discussed her pleading guilty outside her offender classification. She had no complaints about counsel and said she "substantially agree[d]" with the State's recitation of the facts. She stated that nobody had forced her to plead guilty, that she understood the court would determine the manner of service of her sentence, and that she did not have any questions for the court.

At the subsequent sentencing hearing, the trial court denied the Petitioner's request for alternative sentencing relative to the voluntary manslaughter conviction and ordered her to serve the effective ten-year sentence in confinement. The Petitioner appealed, and this court affirmed the manner of service imposed by the trial court. *See State v. Charis Lynn Jetton*, No. W2016-02107-CCA-R3-CD, 2017 WL 2199172 (Tenn. Crim. App. May 18, 2017). The evidence at the sentencing hearing showed that

> . . . on December 16, 2015, the defendant and . . . the victim . . . got into an argument about dinner when he came home from work. According to the defendant, while in the kitchen, her husband bent her hand backwards and pushed her into the wall. He then sat down on a barstool, and the defendant reached into a kitchen cabinet, removed a gun from its case, and shot him in the chest. After shooting her husband, the defendant went upstairs and called 911. The couple's three children were inside the home during the shooting.

> Captain Phil Drewey of the Fayette County Sheriff's Office investigated the victim's death and testified . . . that the defendant confessed to shooting her husband at a distance of no more than six to eight feet. The defendant admitted that she was not in fear for her life or in fear of imminent bodily injury when she shot her husband.

> . . . [T]he defense provided evidence suggesting the defendant had been subject to years of abuse from her husband and also suffered from a mental illness. Specifically, the defense offered two psychological evaluations of the defendant which indicated she likely suffered from schizoaffective disorder. The defense also presented evidence of domestic

-3-

abuse reports filed by the defendant against the victim while they lived in Michigan.

*Id*. at *1.

On April 9, 2018, the Petitioner filed a post-conviction petition, alleging that her guilty pleas were the product of the ineffective assistance of counsel.

## Post-Conviction Proceedings

Defense counsel testified that his representation began before the preliminary hearing and ended after the appeal following the sentencing hearing. He said that he met with the Petitioner five or six times, that his investigator also met with the Petitioner, and that Dr. Hudson, who conducted the mental health evaluation, met with the Petitioner twice. Counsel recalled negotiating a plea agreement close to the deadline and said the State offered to reduce the second degree murder charge to voluntary manslaughter and to reduce the employing a firearm during the commission of a dangerous felony to possession of a firearm during the commission of a dangerous felony. Counsel said that the firearm conviction required three years day-for-day service in confinement, that the State agreed to seven years for voluntary manslaughter if the Petitioner pleaded as a Range II offender, and that the trial court would determine the manner of service for the seven years. Counsel said that the defense argued in support of spilt confinement or full probation and that the State argued in favor of confinement.

Defense counsel testified that he and the Petitioner discussed the plea offer and that the Petitioner wanted to know whether the trial court would suspend any portion of her sentence. Counsel advised her that he "believed . . . there was a good chance that she would get a probation sentence or at least split confinement." Counsel did not believe the trial court would require her to serve her entire sentence based upon the circumstances and facts of the case. Counsel said, though, that he did not promise or guarantee any particular outcome at the sentencing hearing and that, generally, he told his clients he could not guarantee results.

Defense counsel testified that, at the guilty plea hearing, the Petitioner understood everything they discussed, that they reviewed the guilty plea paperwork, that she signed the plea agreement, that she answered all of the trial court's questions, and that she appeared "coherent and able-minded." Counsel said the Petitioner understood that she was pleading guilty to lesser included offenses of the charged offenses, that she was pleading "out of range," and that she did not raise any complaint with his representation.

Defense counsel testified that after the trial court ordered the Petitioner to serve the seven-year sentence for the voluntary manslaughter conviction, he unsuccessfully sought appellate relief. He said that although the scope of his representation did not

-4-

include matters related to the Petitioner's children, he appeared in juvenile court on the Petitioner's behalf in proceedings related to the custody of the Petitioner's and the victim's children who had been inside the home at the time of the shooting. Counsel said that the children were ultimately placed with their paternal uncle.

On cross-examination, defense counsel testified that the Petitioner told Detective Drewery that she feared for her life and that counsel addressed this at the sentencing hearing. Counsel said that he did not discuss with the Petitioner that voluntary manslaughter was a judicial diversion eligible offense, that the Petitioner would have never received diversion, and that the plea offer did not include a diversion request. Counsel said that the only term not included in the plea agreement was manner of service of the voluntary manslaughter sentence. Counsel believed the Petitioner deserved probation, noting the circumstances of other homicides in comparison to the Petitioner's case and the history of domestic abuse. Counsel recalled that the victim violated an order of protection, that the victim was legally intoxicated at the time of the shooting, that the Petitioner feared for her safety, that the trial court did not apply any enhancement factors at the sentencing hearing, and that the killing was not especially aggravated.

The Petitioner testified that defense counsel advised that he "thought" she would receive probation or time served for voluntary manslaughter and would only have to serve time in confinement for the firearm conviction. The Petitioner said counsel told her that he and the trial judge were friends, that he and the judge had spoken "several times" about the case, that the judge was fair, that she would "likely get" probation or time served for voluntary manslaughter, and that the Petitioner would only have to serve three years for the firearm conviction. She said that she was "surprised" the trial court ordered her to serve the seven-year sentence.

On cross-examination, the Petitioner testified that her sole complaint was related to the seven-year sentence because she believed defense counsel promised a specific outcome. She agreed, though, that the plea agreement did not include manner of service for the voluntary manslaughter sentence. She said that counsel advised that the trial court would "give [her] time served or probation and we'd hope for spilt confinement." She agreed that counsel based his statements upon his previous experience but said she felt counsel promised her time served or probation for the voluntary manslaughter sentence.

The post-conviction court denied relief. The court reviewed the guilty plea hearing transcript and determined that the Petitioner freely, voluntarily, knowingly, and intelligently entered her guilty pleas. The court found that the Petitioner understood the consequences of pleading guilty and that she understood the trial court would determine whether to grant her request for probation. The court found that defense counsel did not offer the Petitioner an "express assurance" she would receive probation at the sentencing hearing. The court found that counsel and the Petitioner discussed the possible sentencing outcomes. The court noted that the Petitioner pleaded guilty to lesser included

offenses of the charged offenses and determined that the entry of a guilty plea to avoid a greater sentence did not render the plea involuntary. The court determined that counsel did not provide deficient performance and that the Petitioner failed to establish prejudice. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief. She argues that she received the ineffective assistance of counsel because defense counsel told her the trial court would order her to serve her voluntary manslaughter sentence on probation. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d

334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The focus of the Petitioner's argument is that defense counsel promised her that the trial court would order her to serve her sentence on probation. However, the post-conviction court credited counsel's testimony that he did not promise the Petitioner a particular outcome at the sentencing hearing. To the contrary, counsel testified that he "*believed* . . . there was a good chance that she would get a probation sentence or at least split confinement." Counsel thought the trial court would order probation for the seven-year sentence based upon his previous experience and the circumstances of the offense. Counsel testified that he did not promise or guarantee any particular sentencing outcome. We conclude that the record supports the post-conviction court's determination that counsel did not provide deficient performance in this regard.

Furthermore, the Petitioner has failed to establish any prejudice in connection with her guilty plea. Although she testified at the post-conviction hearing that counsel promised the trial court would order probation for the seven-year sentence, she was not questioned about whether she would have rejected the plea offer and proceeded to a trial had she not received a promise for a particular outcome. We will not speculate. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The guilty plea hearing transcript reflects that, upon questioning by the trial court, the Petitioner neither expressed concern about defense counsel's representation nor mentioned counsel's assertion that she would receive probation for voluntary manslaughter. The Petitioner denied that she had been pressured or forced to plead guilty and said she understood the trial court would determine manner of service of the seven-year sentence. The Petitioner told the court that she understood the plea agreement and the rights she waived by pleading guilty and that she "substantially agree[d]" with the State's factual recitation. When provided the opportunity to ask questions, the Petitioner had none for the court.

We conclude that the record supports the post-conviction court's determinations that the Petitioner's guilty pleas were not the result of the ineffective assistance of counsel. The Petitioner is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE